UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILHERME F. D. S.,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:26-cv-00488-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Petitioner Guilherme F. D. S.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) On January 22, 2026, the Court issued a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why the Court should not grant the Petition. (ECF No. 8.) Respondents filed a motion to dismiss. (ECF No. 13.) Petitioner filed an opposition to the motion to dismiss. (ECF No. 14.) Neither party requested a hearing. (ECF Nos. 13, 14.) For the reasons set forth below, Respondents' motion to dismiss is DENIED and the Petition is GRANTED.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.     Factual and Procedural Background[2]

Petitioner is a citizen of Brazil who has resided in the United States continuously for 21 years. (ECF No. 1 at 1.) Petitioner entered the United States in June 2005. (*Id*.) He was initially detained by immigration authorities and charged in removal proceedings. (*Id.* at 2; ECF No. 1-2.) The same day, immigration authorities found Petitioner not to be a danger to society or flight risk and released him on his own recognizance. (ECF Nos. 1 at 2; 1-3.) In 2022, the United States and Petitioner filed a joint motion to dismiss the removal proceedings against Petitioner, and an immigration judge dismissed the case. (ECF Nos. 1 at 2; 1-4.)

Over the course of 21 years of residency in the United States, Petitioner has established deep and lasting ties with his community. (*See* ECF No. 2.) Petitioner is married to a U.S. citizen and he has U.S. citizen children. (ECF No. 1 at 1.) He has opened his own business, pays taxes, and has established a stable residence with his family. (*Id.* at 3.) Fifteen letters of support demonstrate that he is a beloved and respected pillar of his community. (ECF No. 2.)

Petitioner is also pursuing legal permanent residency. (ECF No. 1 at 2.) He and his wife filed a Form I-130 to establish a qualifying relationship for adjustment of immigration status, which was approved in 2019. (*Id.*; ECF No. 1-1.)

Petitioner has no criminal history. (ECF No. 1 at 1.)

Nevertheless, on December 8, 2025, at an U.S. Citizenship and Immigration Services ("USCIS") appointment to further his application for permanent residency, Petitioner was detained by immigration authorities. (ECF No. 1 at 2.) At the time of his detention, there were no pending removal proceedings against him. (*Id*. at 1–2.) Petitioner was not given any notice, warrant, or reason for his detention. (*Id.* at 9.) While in custody, Petitioner sought a custody hearing in immigration court, which was denied by the immigration judge for lack of jurisdiction. (*Id.* at 3.) Petitioner was detained for approximately 46 days without a hearing. (*See id.*)

Petitioner then challenged the lawfulness of his civil detention through the Petition and a Motion for TRO. (ECF Nos. 1, 5.) On January 22, 2026, the Court found Petitioner was likely to

---

[2]     The facts are not disputed.

2

succeed on his claim that his detention violated the Fifth Amendment Due Process Clause and ordered Petitioner's release. (ECF No. 8.) Petitioner was released on January 23, 2026. (ECF No. 10.) The Court now considers the Petition on the merits.

## II.  STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.  ANALYSIS

Petitioner claims his detention violates procedural due process under the Fifth Amendment Due Process Clause.[3] (ECF No. 1 at 18–19.) Respondents only argument in opposition is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).[4] (ECF No. 13 at 1.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d

---

[3] Petitioner also alleges Respondents violated the Fifth Amendment (substantive due process), the Fourth Amendment (unlawful arrest), the First and Fifth Amendments (right to access to courts), and the Administrative Procedure Act. (ECF No. 1 at 11, 12–13.) The Court finds relief warranted upon finding Respondents violated Fifth Amendment procedural due process as discussed below. Therefore, the Court need not address Petitioner's additional claims.

[4] Alternatively, Respondents request this Court to hold it ruling in abeyance pending the Ninth Circuit's ruling on *Rodriguez Vasquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025). (ECF No. 13 at 2.) As this Court has stated numerous times, it will not delay issuing relief on a prospective chance a pending appeal could have some bearing on a portion of the case.

3

976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.  Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from immigration custody on his own recognizance in 2005.  (ECF No. 1 at 1.)  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his

1   immigration proceedings, if he abided by the terms of his release.  Respondents do not dispute
2   that Petitioner complied with the conditions of his release.  (*See generally* ECF No. 13.)  Indeed,
3   Petitioner was detained during a USCIS biometrics appointment to further his application for
4   permanent residency.  (ECF No. 1 at 2.)  Moreover, Petitioner's liberty interest was strengthened
5   over time and circumstances.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal.
6   2025) (noting the Government's actions in allowing petitioner to remain in the community for
7   over five years strengthened petitioner's liberty interest).  Petitioner has been free for over 20
8   years in the United States.  (*Id.* at 1.)  During that period, his removal proceedings were dismissed
9   on a joint motion with the Government (ECF No. 1-4), thus, the Government was no longer
10  actively seeking to remove Petitioner as he pursued a path to lawful immigration status.  As this
11  Court has found previously, along with many other courts in this district when confronted with
12  similar circumstances, Petitioner has a clear interest in his continued freedom.
13         In opposition, Respondents argue that Petitioner has no liberty interest because he is an
14  "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No.
15  13 at 2.)  Section § 1225(b)(2) mandates detention during removal proceedings for "applicants for
16  admission" who are "seeking admission" and does not provide for a bond hearing.  Conversely,
17  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who
18  are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th
19  1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether
20  to release or detain the individual and it provides several layers of review for an initial custody
21  determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the
22  opportunity to be represented by counsel and to present evidence, the right to appeal, and the right
23  to seek a new hearing when circumstances materially change."  *Id.* at 1202.
24         Until the U.S. Department of Homeland Security ("DHS") changed its policy in July
25  2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in
26  the United States who were detained by immigration authorities and subject to removal.
27         The vast majority of courts across this Circuit, including this one, have repeatedly rejected
28  Respondents' argument on the applicability of § 1225(b)(2).  *See Morales-Flores v. Lyons*, No.

5

1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). For these reasons, the Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b)(2). Thus, Petitioner maintains a strong liberty interest protected by due process.

                B.  <u>Procedures Required</u>

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for over 20 years, during which he built a life with deep ties to his community, raised and supported a family, established a stable residence, paid taxes, and started his own business. (ECF Nos. 1 at 3; 2.) Because of his detention, Petitioner had limited contact with his family and he and his family members all suffered emotional and mental distress. (ECF No. 1 at 17; *see also* ECF No. 2; 3-1.) Additionally, Petitioner suffered

"tremendous financial losses . . . losing work, clients, contracts, and good will that will leave his business beyond repair." (*Id.*)  Therefore, Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-deprivation.  Petitioner was detained without notice, warrant, or explanation. (ECF No. 1 at 1–2, 9.)  He was not given a hearing either pre- or post-deprivation. (*Id.* at 3, 9.)  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, there was no final order of removal at the time Petitioner was detained. (*See* ECF No. 1 at 2.)  Indeed, there were no removal proceedings against Petitioner at all because his case had been dismissed, at the request of the Government, four years prior. (*Id.*; ECF No. 1-4.)  Additionally, Respondents do not argue that Petitioner is a danger or flight risk. (*See* ECF No. 13.)  To do so on this record would be absurd.  In 2005, immigration authorities immediately determined that Petitioner was not a flight risk or danger and released him on his own recognizance. (ECF Nos. 1 at 2; 1-3.)  Over the last two decades, Petitioner's conduct has only strengthened that determination.  Petitioner has no criminal history. (ECF No. 1 at 1.)  He has complied with his immigration obligations since entering the United States and is pursuing a path

of lawful permanent residence. (*See* ECF No. 1.) Certainly, the Government must have determined Petitioner to be safe and stable enough to move to dismiss Petitioner's removal proceedings in 2022. (*See* ECF Nos. 1 at 2; 1-4.) Neither party articulates any change in circumstances to alter the repeated finding that Petitioner is not a danger or flight risk after 21 years of conduct to consider. (*See* ECF Nos. 1, 13.) Thus, Respondents had no legitimate interest in detaining Petitioner.

Additionally, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Even though Respondents filed new removal proceedings against Petitioner after his detention (for no reason apparent to this Court), it is less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where there were no removal proceedings against Petitioner, he was determined not to be a danger or flight risk, and has no criminal history — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty. Further, Respondents have not provided any substantive opposition to the contrary. (*See* ECF No. 13.)

Respondents did not provide either notice or a pre-deprivation hearing. Nor did Respondents provide a post-deprivation hearing, despite Petitioner's request. (ECF No. 1 at 3.) Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV. CONCLUSION

Accordingly, the Court GRANTS the Petition.[5]  IT IS HEREBY ORDERED:

1. Respondents' Motion to Dismiss (ECF No. 13) is DENIED.
2. Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.
3. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.
4. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 18, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[5]  Petitioner also requested an order for attorney's fees and costs and termination of the removal proceedings instituted against Petitioner after his detention. (ECF No. 1 at 26.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.  However, the Court does not have jurisdiction to terminate removal proceedings.  See 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence [removal] proceedings, [or] adjudicate cases[.]").